IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| OSSO-OVCH AXP, | Case No. 1:21cv2212 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| Todd Maxwell, et al., | MEMORANDUM OPINION AND |
| Defendants. | ORDER |

Currently pending is Plaintiff OSSO-OVCH AXP's Motion for Default Judgment against Defendant Todd Maxwell. (Doc. No. 11.) Defendant Maxwell failed to respond to the Complaint that was served on him via personal service on December 2, 2021 (Doc. No. 6), or otherwise appear in this case. As a result, Plaintiff moved for entry of default against Defendant Maxwell, which the Clerk of Court entered on January 19, 2022. (Doc. Nos. 8, 10.) Plaintiff then filed a Motion for Default Judgment, seeking judgment in its favor, permanent injunctive and other equitable relief, and attorney fees. (Doc. No. 11.) Defendant Maxwell has not responded.

For the following reasons, Plaintiff's Motion (Doc. No. 11) is granted in part and denied in part as set forth below.

I. Background

A. Factual Background

The following factual allegations are set forth in the Complaint (Doc. No. 1) and deemed admitted due to Defendant Maxwell's default.

The Ohio Soldiers' and Sailors' Orphans' Home/Ohio Veterans' Children's Home (hereinafter the "OSSO/OVCH Home" or "Home") was a children's home located in Xenia, Ohio.

(*Id*. at ¶ 10.) The OSSO/OVCH Home officially closed its doors to incoming students in 1995. (*Id*. at ¶ 11.) The Association of Ex Pupils of the OSSO/OVCH Home ("AXP") was formed "to perpetuate the memories of childhood and to keep alive the friendships of youth." (*Id*. at ¶ 12.) Plaintiff OSSO-OVCH AXP (hereinafter "Plaintiff") strives to acquaint and keep in touch with all Ex-Pupils of the OSSO/OVCH Home, serving as point-of-contact for Ex-Pupils who are struggling in life or who are looking to rekindle old friendships. (*Id*. at ¶ 13.) To this end, Plaintiff organizes various events throughout the year to bring Ex-Pupils together including, but not limited to, a Christmas Luncheon and Party for Ex-Pupils and their families, and a Spring golf outing. (*Id*. at ¶ 14.)

In August 1979, the building that formerly housed the organization's Memorial Library was designated as the AXP Museum. (*Id*. at ¶ 15-16.) Plaintiff continues to operate the Museum on the grounds of the former Home. (*Id*. at ¶ 16.) The AXP Museum contains various artifacts on exhibit, including photos, printed publications, clothing, and trophies for Ex-Pupils and the public to remember the memory and tradition of The Home. (*Id*. at ¶ 17.) Donations from Ex-Pupils and the public help with the monthly utility costs and repairs of the AXP Museum. (*Id*. at ¶ 18.)

Plaintiff is "the owner of at least the common law trademark rights for the marks OSSOOVCH, ASSOCIATION OF EX-PUPILS, and the AXP logo ('the AXP Marks') for services related to keeping the memories of childhood and friendships alive related to" the OSSO/OVCH Home. (*Id*. at ¶ 19.) Plaintiff has extensively and continuously used the AXP Marks, such that the relevant public has come to identify AXP as the sole and exclusive source of charitable and museum services associated with the AXP Marks. (*Id*. at ¶ 20.)

In addition, Plaintiff is the owner of various pending trademark applications for the AXP Marks. (*Id*. at ¶ 21.) Specifically, on October 7, 2021, Plaintiff filed the following four U.S. Trademark Applications in connection with charitable services in International Class 035 and museum services in International Class 041: (1) U.S. Trademark Application No. 97/064,780 ("the '780 application") for the mark OSSO-OVCH; (2) U.S. Trademark Application No. 97/064,783 ("the '783 application") for the mark AXP; (3) U.S. Trademark Application No. 97/064,784 ("the '784 application") for the mark ASSOCIATION OF EX-PUPILS; and (4) U.S. Trademark Application No. 97/064,789 ("the '789 application") for the mark AXP logo. (*Id*. at ¶¶ 22-25.)

Defendant Maxwell served as President of AXP and as a Board member for several years. (*Id*. at ¶ 44.) While serving as a Board member, Maxwell assisted in a project started by Plaintiff to preserve irreplaceable photos relating to the OSSO/OVCH Home that are housed in the AXP Museum. (*Id*. at ¶ 39.) Specifically, Maxwell assisted in digitizing and organizing these photos for over two and a half years. (*Id*.) Plaintiff alleges, upon information and belief, that Maxwell donated the digitized photos (hereinafter the "Data") without any written agreement to the contrary that Plaintiff owned these digitized photos. (*Id*. at ¶¶ 40, 45.) Maxwell also purchased a software license for the software entitled PixFiler (hereinafter "Software License") for the purpose of securing and preserving the pictures. (*Id*. at ¶ 41.) Maxwell donated the Software License to Plaintiff as well. (*Id*. at ¶¶ 42, 45.)

At some point in time, Majestic Eagle Ink registered the domain name ossoovch.org. (*Id*. at ¶¶ 26, 27.) Maxwell does business as Majestic Eagle Ink. (*Id*.) This domain name was created and

3

used to inure to the benefit of Plaintiff. (*Id*. at ¶ 29.) Plaintiff alleges, upon information and belief, that the ossoovch.org domain name was donated to and is owned by Plaintiff.[1] (*Id*. at ¶ 28.)

In July 2021, the members of Plaintiff elected a new Board (hereinafter "the AXP 2021-2022 Board."). (*Id*. at ¶ 43.) Maxwell was not elected to this Board. *See* Doc. No. 1-6 at PageID# 42. On August 14, 2021, Maxwell sent a letter to the AXP 2021-2022 Board stating that "all files, software, software licensing, and equipment has been turned over" to the AXP 2021-2022 Board. *See* Doc. No. 1 at ¶ 46; Doc. No. 1-6 at PageID# 42. Nevertheless, Maxwell claims that he personally owned the Software License and copied Data associated with the Software License. (*Id*. at ¶ 47.)

On October 8, 2021, Plaintiff, through counsel, sent a letter to Maxwell in which it asserted that the Software License and the rights to the Data belong to AXP. (Doc. No. 1-7 at PageID#s 44-45.) Plaintiff also asserted that Maxwell's use of the marks associated with AXP (such as OSSO and OVCH, OSSO-OVCH, and AXP) has caused and continues to cause actual confusion in the marketplace. (*Id*.) Plaintiff requested that Maxwell (1) cease using any mark and information associated with AXP immediately and refrain from using any information that would cause anyone to think he or any entity he has is associated with AXP; and (2) return any copied Data. (Doc. No. 1 at ¶ 58.) Maxwell did not respond. (Doc. No. 1-8 at PageID# 50.) Several weeks later, on October

---

[1] Plaintiff also owns the Facebook page found at OSSO.OVCH.AXP, as well as an updated Facebook page at AXPOSSOOVCH and the Facebook Group at AXPOSSOOVCH. (*Id*. at ¶¶ 30, 32, 34.) Plaintiff uses these Facebook pages and the Facebook Group to facilitate communication between Ex-Pupils and organize various events. (*Id*. at ¶¶ 31, 33, 35.) Plaintiff's allegations relating to these Facebook pages and Facebook Group relate solely to the other named Defendant in this action, Defendant Candice Regal. According to the Complaint, Defendant Regal previously served on the Board of AXP as the 1st Vice President, Recording Secretary, and Webmaster. (*Id*. at ¶ 48.) Plaintiff alleges that Defendant Regal has improperly claimed ownership of the AXP logo, updated AXP Facebook page, and the ossoovch.org domain name. (*Id*. at ¶ 50.) As Plaintiff's specific allegations regarding Defendant Regal are not relevant to the instant Motion for Default Judgment, they will not be repeated in full herein.

28, 2021, Plaintiff (again, through counsel) sent a follow up letter to Maxwell, including a draft Complaint. (*Id*.) *See also* Doc. No. 1 at ¶ 59.

Maxwell failed to return any copied Data associated with the Software License and failed to transfer control of the ossoovch.com[2] domain name registered by his business Majestic Eagle Ink. (Doc. No. 1 at ¶ 62.) Plaintiff alleges that Maxwell's use of the AXP Marks is likely to cause confusion, mistake, or deception in the minds of the public. (*Id*. at ¶ 63.)

### B. Procedural Background

On November 19, 2021, Plaintiff filed a Complaint in this Court against Defendants Maxwell and Regal alleging claims for federal false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); common law trademark infringement (Count II); and conversion (Count III). (Doc. No. 1.) Plaintiff asks the Court to enter judgment as follows:

- A. That Defendants have infringed and are infringing Plaintiff's federally applied-for and common law trademarks AXP, OSSO-OVCH, ASSOCIATION OF EX-PUPILS, and the AXP Logo (hereinafter "Plaintiff's Marks");

- B. That Defendants and any registrars of the ossoovch.com domain name be ordered to procure the transfer to Plaintiff the domain name ossoovch.com, and any other domain names confusingly similar to Plaintiff's Marks or used in conjunction with the Ohio Soldiers' and Sailors' Orphans' Home/Ohio Veterans' Children's Home confusingly similar to Plaintiff's Marks;

- C. That Defendants be preliminarily and permanently enjoined from further acts of infringement of Plaintiff's Marks or any variation thereof, whether alone or in combination with any other word(s) or element(s), or any mark, domain name, or other designation which depicts, contains, or consists of any name or mark confusingly similar to Plaintiff's Marks;

- D. That Defendants be ordered to pay Plaintiff's reasonable attorneys' fees, costs, and expenses, in accordance with 15 U.S.C. § 1117;

---

[2] In the Complaint, Plaintiff refers inconsistently to this domain name, sometimes referring to it as ossoovch.org and sometimes referring to it as ossoovch.com. *Compare* Doc. No. 1 at ¶¶ 26, 28, 50 *with* Doc. No. 1 at ¶¶ 62, 66, 67.

  E.  That Defendant Maxwell be ordered to return the copied Data associated with the Software License donated to Plaintiff; [and]

\*\*

  G.  That Plaintiff be awarded any such further relief as this Court deems just and equitable under the circumstances.

(*Id.* at pp. 13-14.)

On December 6, 2021, Plaintiff filed an Affidavit of Service indicating that Defendant Maxwell was served via personal service on December 2, 2021. (Doc. No. 6.) Thereafter, on January 18, 2022, Plaintiff filed an Application for Entry of Default against Defendant Maxwell, which was entered by the Clerk of Court the following day. (Doc. Nos. 8, 10.)

On February 16, 2022, Plaintiff filed a Motion for Default Judgment against Defendant Maxwell. (Doc. No. 11.) Plaintiff also served a copy of its Motion on Defendant via both regular and electronic mail that same day. (*Id.*) Defendant Maxwell did not respond to Plaintiff's Motion.[3]

## II. Legal Standard

Following the clerk's entry of default pursuant to Rule 55(a) and the party's motion for default judgment under Rule 55(b), "'the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.'" *P&G Health & Longterm Disability Plan v. Molinary*, 2019 WL 358936 at \* 1 (S.D. Ohio Jan. 29, 2019) (quoting *Morisaki v. Davenport, Allen & Malone, Inc.*, 2010 WL 3341566 at \*1 (E.D. Cal. Aug. 23, 2010)). Specifically,

---

[3] Defendant Regal filed an Answer on March 17, 2022. (Doc. No. 19.) On June 23, 2022, Plaintiff and Defendant Regal filed a Notice that they consent to the exercise of jurisdiction by the assigned Magistrate Judge. (Doc. No. 24.) However, before a civil action may be transferred to the docket of a magistrate judge, *all* parties must consent to the exercise of jurisdiction by that magistrate judge. Here, although Defendant Maxwell is in default, he is nonetheless a party to the instant action and, therefore, his consent is necessary before this case may be transferred to the docket of Magistrate Judge Baughman. As Defendant Maxwell has not consented, this Court will not transfer this case at this time.

this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, 2010 WL 2572713 at *4 (E.D. Mich. June. 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.*, 2010 WL 987167 at *1 (S.D. Ohio Mar. 12, 2010).

### III. Analysis

#### A. Defendant Maxwell's Liability

As noted above, Plaintiff seeks default judgment in its favor on its false designation of origin, common law trademark infringement, and conversion claims against Defendant Maxwell. The Court accepts the well-pleaded factual allegations within Plaintiff's Complaint as true for the purposes of determining liability. *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016). Nevertheless, the Court must still determine if those facts are sufficient to state a claim for relief. *Id.* The Court will address each of Plaintiff's claims separately, below.

##### 1. Common Law Trademark Infringement (Count II)

Plaintiff first seeks default judgment in its favor on its common law trademark infringement claim set forth in Count II.[4] In this Count, Plaintiff alleges that it is the owner of the common law trademark rights for the AXP Marks. (Doc. No. 1 at ¶ 72.) Plaintiff further alleges that Maxwell's unauthorized use of the infringing ossoovch.com domain name (which was created to inure to the benefit of AXP), deceives and is likely to deceive others into believing that Maxwell is sponsored by,

---

[4] The Complaint does not indicate whether this claim is brought under federal law, Ohio law, or the law of another state. In its Motion for Default Judgment, Plaintiff argues that this claim arises under Ohio law. (Doc. No. 11-1 at p. 6.) Accordingly, and in the absence of any opposition from Defendant Maxwell, the Court will this construe this claim as arising under Ohio law.

7

approved by, or affiliated with Plaintiff. (*Id*. at ¶ 74.) Plaintiff alleges that it has suffered damages as a result of Maxwell's infringing conduct and, further, that it will continue to suffer damages if Maxwell is not enjoined, including diminution in the value of and goodwill associated with the AXP Marks. (*Id*. at ¶ 75.)

According to the Sixth Circuit, common law trademark infringement claims under Ohio law follow the same analysis as federal trademark infringement claims under the Lanham Act. *See, e.g., ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center,* 109 F.3d 275, 288 (6th Cir. 1997); *Dish Network, LLC v. Fun Dish, Inc.*, 112 F.Supp.3d 627, 635 (N.D. Ohio 2015). The Lanham Act prohibits an individual or entity from "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). "A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). *See also AWGI, LLC v. Atlas Trucking Company,* 998 F.3d 258, 264 (6th Cir. 2021); *Northern Innovations Holding Corp. v. Keto Plan, Inc.*, 2022 WL 999150 at * 2 (N.D. Ohio April 4, 2022); *Noco Company v. Mac Calabur Investments, LLC*, 2022 WL 2176540 at * 3 (N.D. Ohio June 16, 2022). "The touchstone of liability under § 1114 is whether the defendant's use of the

8

disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc.,* 109 F.3d at 280.[5]

Based on the allegations in Plaintiff's Complaint—which are deemed admitted due to Maxwell's default—the Court concludes that Plaintiff has established the elements required to state a claim for relief for common law trademark infringement as against Maxwell. Plaintiff owns valid trademarks for the AXP Marks because it has exclusively, extensively, and continuously used these marks and the public has come to identify Plaintiff as the sole and exclusive source of charitable and museum services associated with the AXP Marks. (Doc. No. 1 at ¶ 20, Declaration of Robert Gilbert (Doc. No. 11-2) at ¶¶ 24-26.) *See Homeowners Group, Inc v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991) ("It is elementary that service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market"); *Allard Enter., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) (same); *Oatly AB v. D's Naturals LLC*, 2022 WL 1651620 at * 14 (S.D. Ohio May 24, 2022) (same). Maxwell admits that he is liable for common law trademark infringement by advertising and offering services associated with the OSSO/OVCH Home in commerce via his use of the ossoovch.com domain name, website, and AXP Marks without Plaintiff's consent or authorization. By defaulting, Maxwell further admits that his use of Plaintiff's marks has caused, and

---

[5] The Sixth Circuit has set forth an eight-factor test in order evaluate whether there is a likelihood of confusion: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the marks; and (8) likelihood of expansion of the product lines. *Progressive Distribution Services, Inc. v. United Parcel Service, Inc.*, 856 F.3d 416, 425 (6th Cir. 2017). *See also Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). Not all of these factors will be relevant in every case, and in the course of applying them, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp., Inc.,* 931 F.2d at 1107.

will continue to cause, confusion among the public as to the origin of the services offered by Maxwell. Accordingly, and in the absence of any opposition, the Court finds that Plaintiff is entitled to default judgment on Count II for common law trademark infringement, as against Defendant Maxwell.

### 2. False Designation of Origin (Count I)

Plaintiff next seeks default judgment in its favor on Count I of the Complaint for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a). Similar to its common law trademark infringement claim, Plaintiff alleges in this Count that (1) it is the owner of the common law trademark rights for the AXP Marks; (2) Maxwell's unauthorized use of the infringing ossoovch.com domain name (which was created to inure to the benefit of AXP), deceives and is likely to deceive others into believing that Maxwell is sponsored by, approved by, or affiliated with Plaintiff; and (3) Plaintiff has suffered damages as a result of Maxwell's infringing conduct and, further, that it will continue to suffer damages if Maxwell is not enjoined, including diminution in the value of and goodwill associated with the AXP Marks. (*Id*. at ¶¶ 65-68.)

Section 1125(a) of the Lanham Act prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a)(1)(A). The Sixth Circuit has held that a Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir.

1988). *See also Sunless, Inc. v. Palm Beach Tan, Inc.*, 2021 WL 4777439 at * 4 (N.D. Ohio June 30, 2021), *aff'd* 33 F. 4th 866 (6th Cir. 2022). The touchstone of these types of claims is whether the defendant's use of the disputed mark is likely to cause confusion among consumers. *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280. Courts apply the same analysis to assess consumer confusion for both trademark infringement claims and false designation of origin claims. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006); *Northern Innovations Holding Corp.*, 2022 WL 999150 at * 3.

As discussed above, by failing to respond to the Complaint, Maxwell admits that he advertised and offered services associated with the OSSO/OVCH Home in commerce via his use of the ossoovch.com domain name, website, and AXP Marks without Plaintiff's consent or authorization. (Doc. No. 1 at ¶¶ 26, 28, 29, 62; Gilbert Decl. (Doc. No. 11-2) at ¶ 28; Doc. No. 11-1 at p. 10, 13.) Maxwell further admits that his use of Plaintiff's domain name and other AXP Marks is likely to cause confusion among the public as to the source and origin of those services. (Doc. No. 1 at ¶¶ 63, 66, 67.) Accordingly, Plaintiff is entitled to default judgment in its favor on Count I for false designation of origin under the Lanham Act, as against Defendant Maxwell.

### 3. Conversion (Count III)

Lastly, Plaintiff seeks default judgment in its favor on its claim in Count III of the Complaint for conversion. As relevant to Defendant Maxwell, Plaintiff alleges in this Count that (1) it is the owner of the Software License donated by Maxwell; (2) it is the owner of the Data associated with the Software License; (3) Maxwell obtained control and possession of the Data by copying it without Plaintiff's permission; (4) Maxwell has unlawfully and intentionally claimed that the Data and

Software License belong to him and has refused to return the Data; and (5) Plaintiff has suffered irreparable harm and damages as a result of Maxwell's conduct. (Doc. No. 1 at ¶¶ 77-82.)

"To prevail on a conversion claim, a plaintiff must establish '(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Academic Imaging, LLC v. Soterion Corp.*, 352 Fed. Appx. 59, 67 (6th Cir. 2009) (quoting *Dream Makers v. Marshek*, 2002 WL 31839190 (Ohio App. 8th Dist. Dec. 19, 2002)). Further, "a demand and refusal are usually required to prove the conversion of property otherwise lawfully held." *Fenix Enterprises, Inc. v. M&M Mortg. Corp., Inc.*, 624 F.Supp.2d 834, 843 (S.D. Ohio 2009).

The Court finds that Plaintiff is entitled to default judgment in its favor as against Maxwell with respect to this claim. Maxwell admits that Plaintiff owns both the Software License and Data associated with that License. (Doc. No. 1 at ¶¶ 77, 78.) He further admits that he obtained control and possession of the Data by copying it without Plaintiff's permission. (*Id*. at ¶ 79.) Plaintiff demanded the return of the Software License and Data in its October 8 and 28, 2021 cease and desist letters, but Maxwell failed to comply. (*Id*. at ¶ 81; Doc. Nos. 1-7, 1-8.) Finally, by failing to answer the Complaint, Maxwell admits that Plaintiff has been damaged by Maxwell's refusal to return the Data. (Doc. No. 1 at ¶ 82.) Accordingly, Plaintiff is entitled to default judgment in its favor on Count III for conversion, as to Defendant Maxwell.

### B. Injunctive and other Equitable Relief

Plaintiff requests that the Court issue a permanent injunction against Defendant Maxwell, prohibiting him from infringing the AXP Marks. (Doc. No. 11-1 at pp. 5, 15.) The Lanham Act authorizes a court to grant injunctive relief "according to the principles of equity and upon such terms

as the court may deem reasonable" to prevent violations of trademark law.  *See* 15 U.S.C. § 1116(a); *see also, e.g., Northern Innovations Holding Corp.* 2022 WL 999150 at *5; *Noco*, 2022 WL 2174650 at * 4; *Juul Labs, Inc. v. Fli High, LLC*, 2021 WL 3633512 at *2-3 (N.D. Ohio Aug. 17, 2021); *Chanel, Inc. v. Jermaine Wice*, 2015 WL 521144 at *8 (N.D. Ohio Feb. 9, 2015).

To obtain a permanent injunction,

> . . . plaintiffs must show that: (1) they have suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiffs and defendants weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG,* 469 F.3d at 550 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). The decision whether to grant a permanent injunction lies within the Court's discretion. *eBay Inc.*, 547 U.S. at 391; *List v. Ohio Elections Comm'n*, Case No. 1:10–cv–720, --- F.Supp.3d ---, 2014 WL 4472634, at *5 (S.D. Ohio Sept.11, 2014) (citations omitted). An evidentiary hearing is not required prior to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute. *Chanel v. Cong*, No. 10-2086, 2011 WL 6180029, at *9 (W.D. Tenn. Dec. 8, 2011) (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir.2005)).

*Chanel, Inc.*, 2015 WL 521144 at *8.  *See also Northern Innovations Holding Corp.* 2022 WL 999150 at *5; *Noco*, 2022 WL 2174650 at * 4; *Vidrio Financial, Ltd v. Vidrio Limited*, Case No. 1:21cv1079 (N.D. Ohio) (Barker, J.) (Doc. No. 15 at p. 9.)

In this case, Defendant Maxwell's liability is established.  *See supra*.  As to the first injunctive relief factor, "no particular finding of irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007).  *See also American Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757 (E.D. Mich. 2014); *Northern Innovations Holding Corp.*, 2022 WL 999150 at *5.  Rather, irreparable injury generally follows when a likelihood of confusion appears from infringement or unfair competition. *Id.*  Here, the Court finds that Plaintiff has suffered an irreparable injury: there is a likelihood of

13

confusion, as Maxwell continues to use Plaintiff's AXP marks without Plaintiff's permission. (Doc. No. 1 at ¶ 68, 75.)

As to the second factor, the Sixth Circuit has held that there is no adequate remedy at law where there is a potential for future harm from continuing infringement. *Audi,* 469 F.3d at 550. Here, there is potential for future harm from Maxwell's infringement because Maxwell continues to infringe upon Plaintiff's marks even after receiving two cease-and-desist letters and service in this lawsuit, making it likely that he will continue his infringement upon Plaintiff's marks. (Doc. No. 1 at ¶¶ 56, 58, 59, 62, 68, 75.) *See Northern Innovations Holding Corp.*, 2022 WL 999150, at *5; *Noco Company*, 2022 WL 2176540 at * 5.

As to the third factor (i.e., the balance of hardships), Plaintiff faces the possibility of loss of goodwill due to Maxwell's continued infringing conduct, while it appears that Maxwell would face little hardship in being restrained from infringing upon Plaintiff's marks. *See Noco*, 2022 WL 2176540 at * 5; *Chanel, Inc.*, 2015 WL 521144 at * 9. Finally, as to the fourth factor, preventing consumer confusion is in the public's interest. *See McGee*, 490 F. Supp. 2d at 883 ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."); *Audi*, 469 F.3d at 550 (concluding that it was in the public's interest to issue an injunction to prevent consumers from being misled). Therefore, it is in the public's interest to issue this injunction.

Accordingly, the Court finds that the four factors weigh in favor of granting permanent injunctive relief against Defendant Maxwell. The Court, therefore, grants Plaintiff's request and hereby ORDERS that Defendant Maxwell is prohibited from further acts of infringement of

Plaintiff's Marks or any variation thereof, whether alone or in combination with any other word(s) or element(s), or any mark, domain name, or other designation which depicts, contains, or consists of any name or mark confusingly similar to Plaintiff's Marks.

Plaintiff also seeks additional equitable relief. (Doc. No. 1 at pp. 11, 13-14; Doc. No. 11-1 at p. 15.) Specifically, Plaintiff requests an order requiring that (1) the ossoovch.com domain name be transferred to Plaintiff, and (2) Maxwell return the copied Data associated with the Software License to Plaintiff. (*Id.*) Plaintiff cites no authority in support of this request.

As noted above, the Lanham Act permits a court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Pursuant to this statute, some district courts in the Sixth Circuit have ordered the transfer of domain names for Lanham Act violations in the absence of a specific claim under the Anticybersquatting Consumer Protection Act[6] ("ACPA"), 15 U.S.C. § 1125(d)(1)(A), while others have not. *See Chanel, Inc. v. Song Xu*, 2011 WL 13269431 at * 10 (W.D. Tenn. March 15, 2011) (collecting cases). At least one district court in this Circuit has noted that "where the ACPA's explicit statutory authority is not implicated, the transfer of domain names is 'generally compelled as a matter of last resort.'" *Id*. (quoting *Chanel v. Junying Cui*, 2010 U.S. Dist. Lexis 68689 at * 6 (S.D.N.Y. July 7, 2010) (requiring the plaintiff to show a record of misconduct or otherwise establish that such a "strong remedy" is appropriate)). Here, Plaintiff has not sufficiently argued or demonstrated that this Court should order

---

[6] The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) expressly permits a court to order the forfeiture, cancellation, or transfer of a domain name under certain circumstances. *See* 15 U.S.C. § 1125(d)(1)(C). Here, however, the Complaint does not allege a claim under the ACPA.

the transfer of the domain name(s) in question.[7] Therefore, the Court declines to enter an order transferring the ossoovch.com and/or ossoovch.org domain names to Plaintiff.

The Court does, however, find that it would be reasonable to order Defendant Maxwell to return the copied Data associated with the Software License to Plaintiff. Accordingly, the Court hereby orders Defendant Maxwell to do so within ten (10) days of the date of this Order.

### C. Attorney Fees

Lastly, Plaintiff argues (summarily) that "this case is exceptional and reasonable attorneys' fees should be awarded pursuant to 15 U.S.C. § 1117(a)." (Doc. No. 11-1 at p. 15.) Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An "exceptional" case is "'simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Evoqua Water Technologies, LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). A case may be exceptional where the trademark infringement was malicious, willful, fraudulent, or deliberate. *See Coach, Inc.*, 717 F.3d at 505; *Northern Innovations Holding Group*, 2022 WL 999150 at * 4; *Vidrio Financial Ltd.*, Case No. 1:21cv1079 (N.D. Ohio) (Doc. No. 15 at p. 10.)

Here, the Court finds that this is an exceptional case warranting an award of attorney fees because Maxwell's infringing activity is willful. Maxwell had actual notice of his infringing activity via Plaintiff's October 2021 cease and desist letters but failed to either cease using Plaintiff's marks

---

[7] This is particularly the case where it is not even entirely clear from the pleadings what the proper domain name is, i.e., whether it is ossoovch.com or ossoovch.org. *Compare* Doc. No. 1 at ¶¶ 26, 28, 50 *with* Doc. No. 1 at ¶¶ 62, 66, 67.

or respond to Plaintiff's claims that his use of Plaintiff's marks violated state and federal trademark law. (Doc. No. 1 at ¶¶ 56, 58, 59, 62; Doc. Nos. 1-7, 1-8.) *See CARSTAR Franchisor SPV LLC v. Collision Express of Ohio Inc.*, 2020 WL 1956988 at *1 (S.D. Ohio Apr. 22, 2020) (finding trademark infringement case exceptional after granting default judgment where defendant willfully infringed and failed to litigate plaintiff's claims); *Coach,* 717 F.3d at 505–06 (upholding the district court's award of attorneys' fees under the Lanham Act when the defendant had actual notice of the infringing activity yet continued to facilitate the activity and also failed to litigate the issue of liability)). *See also Northern Innovations Holding Group*, 2022 WL 999150 at * 4; *Vidrio Financial Ltd.*, Case No. 1:21cv1079 (N.D. Ohio) (Doc. No. 15 at p. 10.)

After determining the case is exceptional, the Court must determine whether plaintiff's requested fee award is reasonable. The Sixth Circuit has held that a reasonable attorney fee is one "that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Serv. LP*, 320 Fed. Appx. 442, 446 (6th Cir. 2009) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). The Sixth Circuit outlined the process for determining a reasonable fee in *Dowling*:

> Determining a reasonable fee begins with calculating the product of "a reasonable hourly rate" and "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This product has come to be known as the "lodestar." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 642 (6th Cir. 2009). We must indulge a "strong presumption" that the lodestar "represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

*Id*. The Sixth Circuit also noted that district courts have "broad discretion" when determining what constitutes a reasonable hourly rate for an attorney. *Id*. at 447. In determining a reasonable rate, a court may consider awards in analogous cases, *see Johnson v. Conn. Gen. Life. Ins. Co*., 2008 WL

697639 at *5 (N.D. Ohio Mar. 13, 2008), as well as the court's own knowledge and experience in awarding attorney fees. *Ousley v. Gen. Motors Ret. Program for Salaried Emps.*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006). With respect to determining whether the number of hours billed was reasonable, the "'standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.'" *Gilden v. Platinum Holdings Group, LLC*, 2019 WL 590745 at *4 (S.D. Ohio Feb. 13, 2019).

Plaintiff has not provided the Court with the information necessary for this Court to perform a lodestar calculation or otherwise determine whether its request for an award of attorney's fees is reasonable. Indeed, Plaintiff's entire request for attorney's fees is contained in a single sentence of its Motion. (Doc. No. 11-1 at p. 15.) Plaintiff does not acknowledge, address, or apply any of the legal authority noted above regarding the factors guiding a district court's determination of the reasonableness of requested fee awards. (*Id*.) Nor does Plaintiff request that the Court award any particular amount in attorney fees or provide any supporting documentation (such as detailed time sheets, affidavits from counsel, etc.) in support of a fee award.

Accordingly, Plaintiff's request for attorney fees is denied without prejudice subject to submission of a properly supported motion within ten (10) days of the date of this Order. *See Noco*, 2022 WL 2176540 at *6 (denying without prejudice plaintiff's motion for attorney fees where plaintiff failed to provide documentation needed by the court to conduct a lodestar analysis to establish reasonable attorney fees); *Dynamic Mounting, LLC v. AV Express*, 2019 WL 666928 at *4 (N.D. Ohio Feb. 19, 2019) (same).

**IV.     Conclusion**

Accordingly, and for all the foregoing reasons, Plaintiff's Motion for Default Judgment (Doc. No. 11) is granted in part and denied in part as set forth herein. The Court hereby ORDERS that Defendant Maxwell is prohibited from further acts of infringement of Plaintiff's Marks or any variation thereof, whether alone or in combination with any other word(s) or element(s), or any mark, domain name, or other designation which depicts, contains, or consists of any name or mark confusingly similar to Plaintiff's Marks. In addition, the Court ORDERS Defendant Maxwell to return the copied Data associated with the Software License to Plaintiff within ten (10) days of the date of this Order. If Plaintiff intends to further pursue its request for attorney fees, it must file a properly supported motion seeking the same within ten (10) days of the date of this Order.

     **IT IS SO ORDERED.**


Date: June 24, 2022

 _s/Pamela A. Barker_
PAMELA A. BARKER
U. S. DISTRICT JUDGE